IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BILLY G. JOHNSON, | ) |
| Petitioner, | ) |
| v. | ) Civ. No. 12-219-SLR |
| KARL HINES, Bureau Chief, and JOSEPH R. BIDEN, III, Attorney General of the State of Delaware, | ) |
| Respondents.[1] | ) |

Billy G. Johnson. Pro se petitioner.

Elizabeth R. McFarlan. Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

**MEMORANDUM OPINION**

March 12, 2015
Wilmington, Delaware

---

[1] Office of Probation and Bureau Chief Karl Hines has been substituted for the State of Delaware, an original named party in this case. See Fed. R. Civ. P. 25(d).

ROBINSON, District Judge

## I. INTRODUCTION

Presently before the court is petitioner Billy G. Johnson's ("petitioner") application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 1; D.I. 3) Petitioner was under the supervision of the Delaware Office of Probation and Parole when he filed the instant application. For the reasons that follow, the court will dismiss his application.

## II. FACTUAL[2] AND PROCEDURAL BACKGROUND

On September 21, 2006, Delaware State Police Detective William Crotty was working undercover for the Sussex County Drug Task Force. While driving through the Cool Spring Farms areas of Milton, Delaware, Detective Crotty was flagged down by petitioner. Detective Crotty stopped his vehicle and petitioner asked him what he "needed." From this question Detective Crotty inferred that petitioner was offering to sell him illegal drugs. Detective Crotty asked petitioner for "tree," a term commonly understood to mean marijuana. Petitioner responded that he could help and asked Detective Crotty for a ride around the corner. Detective Crotty agreed and followed petitioner's directions to a yellow house on Meadowview Drive. Detective Crotty gave $40 to petitioner, who then told the Detective to drive down the street and wait for him.

Detective Crotty parked about 100 yards away, and watched petitioner knock twice on the door of the yellow house. No one answered. Petitioner then walked back to Detective Crotty's car and told him that they would have to wait. Shortly thereafter, two cars pulled up to the yellow house and two men got out. Petitioner told Detective Crotty to wait, and approached the two men. Detective Crotty then observed petitioner

---

[2]The facts are summarized from the Delaware Supreme Court's description in *Johnson v. State*, 976 A.2d 171 (Table), 2009 WL 2006881, at *1 (Del. July 13, 2009).

and the two men engage in a series of hand-to-hand exchanges, after which the other men left the scene.

Suspecting that petitioner had just bought drugs, Detective Crotty motioned for petitioner to return to his car. The Detective asked petitioner if he now had the marijuana he had asked for earlier. Petitioner replied that to get marijuana, Detective Crotty would have to drive him and his girlfriend Lynn Bates (who was standing outside of the yellow house) to a different part of town. Because Detective Crotty did not want to have more than one other person in his car, he asked petitioner if he could purchase crack cocaine instead of marijuana. Petitioner told Detective Crotty to drive up the street and then come back.

As Detective Crotty was driving away, he looked in his rear view mirror and saw petitioner hand something to Bates. Detective Crotty turned his car around, intending to drive back towards petitioner, but petitioner waved him away and pointed toward Bates, indicating that Crotty should go to Bates to purchase the drugs. Crotty dove up to Bates, who handed him a package containing crack cocaine, after which Detective Crotty drove away.

In November 2006, petitioner was charged with delivery of cocaine and second degree conspiracy. *See State v. Johnson*, 2010 WL 1138867, at *1 (Del. Super. Mar. 24, 2010). At petitioner's trial, Bates testified that she was petitioner's girlfriend, that petitioner gave her some crack cocaine, and that petitioner told her to give it to Detective Crotty. *Id.*

On September 11, 2008, a Delaware Superior Court jury convicted petitioner of delivery of cocaine and second degree conspiracy. *See Johnson*, 2009 WL 2006881, at *2. The Superior Court sentenced him as an habitual offender to an aggregate of seven years of Level V incarceration, suspended after five years for two years of probation. *See Johnson*, 2010 WL 1138867, at *1. The Delaware Supreme Court affirmed petitioner's convictions and sentence on direct appeal. *See Johnson*, 2009 WL 2006881, at *3.

In September 2009, petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), asserting three grounds for relief: (1) ineffective assistance of counsel; (2) improper habitual offender sentence; and (3) improper indictment and jury instructions regarding accomplice liability. *See Johnson,* 2010 WL 1138867, at *1. The Superior Court denied petitioner's Rule 61 motion, and the Delaware Supreme Court affirmed that decision. *Id.*; *see Johnson v. State,* 5 A.3d 630 (Table), 2010 WL 3672859 (Del. Sept. 21, 2010).

Petitioner filed a second Rule 61 motion, alleging: (1) the trial court violated his constitutional rights by adding the offense of liability for the conduct of another to the indictment; (2) the trial court violated his constitutional rights by instructing the jury on the offense of liability for the conduct of another because the offense was not included in the indictment; (3) the trial court improperly *sua sponte* amended the indictment to include the offense of the liability for the conduct of another; and (4) there was insufficient evidence for the grand jury to indict him. The Superior Court denied the

3

motion. *See State v. Johnson*, 2011 WL 3557014 (Del. Super. July 29, 2011). Petitioner did not appeal that decision.

Petitioner filed a third Rule 61 motion alleging ineffective assistance of counsel. *See State v. Johnson*, 2011 WL 5517304, at *1 (Del. Super. Nov. 8, 2011). The Superior Court denied the motion as procedurally barred by Rule 61(i)(4), and the Delaware Supreme Court affirmed that decision. *Id*; *Johnson v. State*, 36 A.3d 349 (Table), 2012 WL 379600 (Del. Feb. 6, 2012).

Petitioner timely filed a § 2254 application in this court. (D.I. 1) The State filed an answer, interpreting the application as asserting only one claim and arguing that the court should deny that sole claim for failing to allege an issue cognizable on federal habeas review or, alternatively, because the claim is procedurally barred. (D.I. 12)

## III. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). One prerequisite to federal habeas review is that a petitioner must exhaust all remedies available in the state courts. *See* 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by "fairly presenting" the substance of the federal habeas claim to the state's highest court, either on direct appeal or in a post-conviction

proceeding, and in a procedural manner permitting the state courts to consider it on the merits. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

A federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

5

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence - -whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## IV. DISCUSSION

Although petitioner's application contains four claims, the court construes the repetitive claims in the application as asserting only two grounds for relief: (1) the trial court constructively amended the indictment when it instructed the jury that petitioner could be convicted as either a principal or an accomplice which, in turn, violated petitioner's due process rights; and (2) there was insufficient evidence to support petitioner's conviction because the evidence presented during the trial differed from the evidence that was presented to the grand jury.

### A. Claim One: Improper Amendment of Indictment

The court construes claim one as alleging that the trial court's jury instruction regarding accomplice liability constructively amended the indictment. *See, e.g, United*

6

States v. McKee, 506 F.3d 225, 229 (3d Cir. 2007)(an indictment is "constructively amended when evidence, arguments, or the district court's jury instructions effectively amend the indictment by broadening the possible bases for conviction from that which appeared in the indictment."). Construed in this manner, the court concurs with the State's argument that the instant claim fails to allege an issue cognizable on federal habeas review. A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Claims based on errors of state law are not cognizable on federal habeas review, and federal courts cannot re-examine state court determinations on state law issues. *Estelle v. McGuire*, 502 U.S. 62, 67-8 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Riley v. Taylor*, 277 F.3d 261, 310 n.8 (3d Cir. 2001). Because the Fifth Amendment right to a grand jury indictment does not apply to State criminal prosecutions,[4] "the legality of an amendment to an indictment is primarily a matter of state law." *United States ex. rel Wojtycha v. Hopkins*, 517 F.2d 420, 425 (3d Cir. 1975). Therefore, to the extent petitioner's claim alleges that his indictment was constructively amended during his trial, the court concludes that it must dismiss the claim for failing to present an issue cognizable on federal habeas relief.

To the extent petitioner argues that the jury instruction constructively amended the indictment to charge him as an accomplice, which in turn, deprived him of notice of the offense charged, the court liberally construes the claim as asserting a due process issue that is cognizable in this proceeding. *See, e.g., Wojtycha*, 517 F.2d at 425

---

[4]*See Apprendi v. New Jersey*, 530 U.S. 266, 272 (1994); *Hurtado v. California*, 110 U.S. 516 (1884).

7

(acknowledging that an amendment to a State indictment may raise federal due process issues). Nevertheless, this alternative construction still does not aid petitioner in his quest for relief.

Petitioner presented variations of the instant constructive amendment of indictment claim to the Delaware Superior Court in his first, second, and third Rule 61 motions. The Superior Court denied the constructive amendment claim presented in petitioner's first Rule 61 motion and, although petitioner appealed the Superior Court's denial of his first Rule 61 motion to the Delaware Supreme Court, he did not specifically challenge the Superior Court's rejection of the instant claim in his opening brief. As such, the Delaware Supreme Court deemed the claim waived under Delaware Supreme Court Rule 14(b). See Johnson, 2010 WL 3673859, at *1 n.4 (citing Murphy v. State, 632 A.2d 552, 554 (Del. 1990). In his second Rule 61 motion, petitioner argued that the trial judge impermissibly amended his indictment to include accomplice liability. The Superior Court denied that claim, and petitioner did not appeal that decision to the Delaware Supreme Court. Instead, petitioner filed a third Rule 61 motion, this time alleging that his attorney had been ineffective for not challenging the State's alleged amendment of his indictment to include accomplice liability. Petitioner's third Rule 61 motion also alleged that the constructive amendment of the indictment violated his rights under the Fourteenth Amendment. The Superior Court denied these claims as barred by Rule 61(i)(4) because petitioner previously raised them in his earlier Rule 61 motions. The Delaware Supreme Court affirmed that decision.

By explicitly deeming that petitioner waived claim one in his first Rule 61 appeal, and by explicitly holding that claim one was barred by Rule 61(i)(4) in his third Rule 61

appeal, the Delaware Supreme Court articulated plain statements under *Harris v. Reed* that its decision rested on state law grounds. This court has previously held that the Delaware's waiver rule and Rule 61(i)(4) constitute independent and adequate state procedural grounds precluding federal habeas review. *See Drumgo v. Pierce*, 2014 WL 7014526, at *5 (D. Del. Dec. 10, 2014)(waiver rule); *Wilson v. Carroll*, 2006 WL 2294881 (D. Del. Aug. 8, 2006)(Rule 61(i)(4)). Thus, the court can only review claim one if petitioner demonstrates cause and prejudice, or that a miscarriage of justice will occur absent such review.

Petitioner does not allege, and the court does not discern, any cause for his failure to present his constructive indictment amendment/due process claim to the Delaware state courts. In the absence of cause, the court will not address the issue of prejudice. In turn, the miscarriage of justice exception to the procedural default doctrine is inapplicable, because petitioner has not provided new reliable evidence of his actual innocence. Accordingly, the court will alternatively deny claim one as procedurally barred.

### B. Claim Two: Insufficient Evidence

In claim two, petitioner contends that there was insufficient evidence to support his conviction because the evidence presented at trial was not the same evidence that was presented to the grand jury. The record reveals that petitioner did not present this claim to the Delaware Supreme Court on direct appeal or in any of this two post-conviction appeals.[3] At this point in time, Rule 61(i)(1), (2), and (3) would bar petitioner

---

[3]In his first Rule 61 appeal, petitioner argued that he was "denied access to the original grand jury indictment as well as the amended grand jury indictment and the grand jury testimony to support both." *Johnson*, 2010 WL 3672859, at *1. This argument is not

9

from presenting this argument in a new Rule 61 motion in order to have an opportunity to appeal any adverse decision to the Delaware Supreme Court. *See* Del. Super. Ct. Cr. R. 61(i)(1) (articulating a one year filing period); *Lawrie v. Snyder*, 9 F. Supp. 2d 428, 453 (D. Del. 1998)(Rule 61(i)(2) bars any ground for relief that was not asserted in a prior proceeding); *Bright v. Snyder*, 218 F. Supp. 2d 573, 580 (D. Del. 2002)(Rule 61(i)(3) bars claims not raised in the proceedings leading to defendant's conviction). Thus, although deemed exhausted, claim two is still procedurally defaulted, meaning that the court cannot review its merits absent a showing of cause and prejudice, or to prevent a miscarriage of justice.

Once again, petitioner does not assert, and the court does not discern, any cause for his procedural default of claim two. The absence of cause obviates the court's need to discuss the issue of prejudice. Moreover, the court concludes that petitioner's default should not be excused under the miscarriage of justice exception to the procedural default doctrine, because petitioner has not provided new reliable evidence of his actual innocence.

Accordingly, the court will deny claim two as procedurally barred from federal habeas review.

## V. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. *See* 3d Cir. L.A.R. 22.2 (2011). The court may issue a certificate of appealability only when

---

substantially similar to claim two in this proceeding. In his third Rule 61 appeal, petitioner did not challenge the evidence presented to the grand jury. Finally, although petitioner alleged insufficient evidence to support the grand jury indictment in his second Rule 61 motion, petitioner did not appeal the Superior Court's denial of that Rule 61 motion.

10

a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas application on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the application states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

For the reasons stated above, the court concludes that petitioner's habeas application must be denied. Reasonable jurists would not find this conclusion debatable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## VI. CONCLUSION

For the foregoing reasons, the court will deny petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254. An appropriate order will be entered.